UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: _____

**JANE DOE,**

    **Plaintiff,**

    v.

**LQ MANAGEMENT LLC d/b/a LA QUINTA INN located at 7901 SW 6th ST, PLANTATION, FL, and LQ MANAGEMENT LLC d/b/a LA QUINTA INN FORT LAUDERDALE TAMARAC EAST #4006,**

    **Defendants.**
_____/

## COMPLAINT

Plaintiff JANE DOE sues Defendants LQ MANAGEMENT LLC d/b/a LA QUINTA INN located at 7901 SW 6th ST, PLANTATION, FL, and LQ MANAGEMENT LLC d/b/a LA QUINTA INN FORT LAUDERDALE TAMARAC EAST #4006 (collectively referred to as "the Hotel Defendants") and alleges:

## SUMMARY

1. Plaintiff Jane Doe was born in 1995 and is a survivor of sex trafficking. As a minor, Jane Doe was trafficked for sex in counties including Broward County, Florida.

2. At all times material to this action, the Hotel Defendants enabled the sexual trafficking and victimization of Jane Doe starting when she was just seventeen (17) years old, in violation of the Trafficking Victims Protection Reauthorization Act 2003, 18 U.S.C. §1595 ("TVPRA").

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1331 because

this action arises under the Constitution, laws, or treaties of the United States.

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims asserted in this action occurred in the judicial district where this action is brought.

## PARTIES

5. Jane Doe is an individual over the age of eighteen (18) and resides in Florida. She is a victim of sex trafficking as that term is defined under the TVPRA and is therefore protected under the applicable provisions of the TVPRA.

6. This case was previously filed against LQ Management LLC in the Middle District of Florida (Case No. 6:19-cv-02414). On March 4, 2020, the judge presiding over the case in the Middle District of Florida granted Plaintiff's Motion for Leave to Proceed Anonymously. The case was then transferred to the Southern District of Florida before Ms. Doe voluntarily dismissed it. Ms. Doe is filing, contemporaneous with this complaint, a motion seeking to continue proceeding anonymously.

## JANE DOE

7. From late 2012 through approximately 2016, while Jane Doe was 17 to 21-years-old, Jane Doe was subject to repeated instances of rape, physical abuse, verbal abuse, exploitation, psychological torment, kidnapping, and false imprisonment on the Hotel Defendants' properties.

8. When she was 17-years-old, Jane Does' trafficker prostituted her and placed ads for her sexual services on internet sites, including Backpage. Oftentimes, Jane Doe would walk into the Hotel Defendants' lobbies and pay cash for the rooms. If the hotel did not accept cash, she would get a pre-paid credit card and then go to the hotel to rent a room.

9. Jane Does' trafficker was named Dread. He controlled everything—the money,

food, clothes, who she interacted with, sanitary supplies, and toiletries.

10. Jane Doe was not allowed to eat or sleep without permission. If she slept, she wasn't making her trafficker any money. She was often kept awake for days with a steady cocktail of illegal drugs and red bull.

11. Jane Doe's trafficker would take her money, making her beg for food, clothes toiletries and the illegal drugs which he used to keep her performing sex acts for money. He controlled her through force, fraud and coercion, implemented through physical and psychological manipulations and punishments consisting of threats and physical violence when she did not conform to his demands. The trafficker transported Jane Doe to and from the various Hotel Defendants' hotels while the employees of those hotels essentially ignored what was going on or looked the other way.

## HOTEL INDUSTRY STANDARDS

12. It is well known that hotels are highly favored by sex traffickers because they provide privacy and anonymity for the purchasers of sex to meet the child/young woman being exploited. *See City of Los Angeles, Calif. v. Patel*, 135 S. Ct. 2443, 2457 (2015).

13. In 2004, the organization End Child Prostitution and Trafficking (ECPAT-USA) launched the Tourism Protection Code of Conduct ("the Hotel Code of Conduct") in the United States.[1]

14. The Hotel Code of Conduct is a joint venture between the tourism and hospitality sectors and ECPAT-USA.[2] It is a voluntary set of business principles that travel companies can

---

[1] ECPAT-USA, *No Vacancy For Child Sex Traffickers Impact Report* (2017), *available at*: https://static1.squarespace.com/static/594970e91b631b3571be12e2/t/59c9b6bfb07869cc5d792b8c/1506391761747/NoVacany_Report.pdf.
[2] https://www.ecpatusa.org/blog/tag/The+Code

3

implement to prevent child trafficking.[3]

15. The Hotel Code of Conduct establishes a framework for companies to provide training, education, and collaboration with other stakeholders to help prevent potential abuse.[4]

16. The Hotel Code of Conduct is well known in the hospitality industry. It identifies the six (6) steps companies can take to identify and prevent child sex trafficking: (1) establish corporate policy and procedures against sexual exploitation of children; (2) train employees in children's rights, the prevention of sexual exploitation and how to report suspected cases; (3) include a clause in further partner contracts stating a common repudiation and zero tolerance policy of sexual exploitation of children; (4) provide information to travelers on children's rights, the prevention of sexual exploitation of children and how to report suspected cases; (5) support, collaborate, and engage stakeholders in the prevention of sexual exploitation of children; and (6) report annually on the company's implementation of Code-related activities.

17. The Hotel Code of Conduct includes an "Anti-Trafficking Hotel Checklist" to help hotels identify red flags of human trafficking.

18. For years hotels were urged to sign the Hotel Code of Conduct and commit to taking action against sex trafficking in their hotels.

19. With proper training and other reasonable security measures, hotel owners, operators and employees could prevent the trafficking of persons on their properties. The well-known and easily identifiable signs of sex trafficking, or "red flags" of sex trafficking, include:

    a. Paying for rooms with cash or pre-paid credit cards;

---

[3] *Id.*
[4] *Id.*

    b.    A guest lingering just outside the room for long periods of time (i.e., the trafficker waiting outside as the johns are inside the room abusing victims like Plaintiff);

    c.    Multiple guests coming and going from the hotel or motel—particularly a large stream of adult males—without ever checking into a room;

    d.    Excessive foot traffic going in or out of a particular room or area of the hotel or motel;

    e.    Staying for multiple days with few possessions;

    f.    Requesting a room overlooking the parking lot;

    g.    Frequently requesting new linens, towels, and refusing housekeeping services;

    h.    Guests frequently entering and emerging from rooms with no luggage or identification.

## THE HOTEL DEFENDANTS

**LQ MANAGEMENT LLC d/b/a LA QUINTA INN located at 7901 SW 6th ST, PLANTATION, FL**

20.    LQ MANAGEMENT LLC is a Delaware limited liability company with its principle place of business in Irving, Texas.

21.    At all times material hereto, LQ MANAGEMENT LLC was authorized to and doing business in the State of Florida.

22.    On information and belief, during the relevant time frame, LQ MANAGEMENT LLC owned, managed, supervised, operated, and controlled the La Quinta Inn brand and/or properties, including the La Quinta Inn & Suites located at 7901 SW 6th Street, Plantation, FL 33324 ("SW 6th Street La Quinta").

23. At all times material hereto, LQ MANAGEMENT LLC was aware of the Hotel Code of Conduct and the steps that could be taken to identify and prevent sex trafficking, but has refused to sign it.

### LQ MANAGEMENT LLC d/b/a LA QUINTA INN FORT LAUDERDALE TAMARAC EAST #4006

24. LQ MANAGEMENT LLC is a Delaware limited liability company with its principle place of business in Irving, Texas.

25. At all times material hereto, LQ MANAGEMENT LLC was authorized to and doing business in the State of Florida.

26. On information and belief, during the relevant time frame, LQ MANAGEMENT LLC managed, supervised, operated, and controlled the La Quinta Inn brand and/or properties, including the La Quinta Inn & Suites located at located at 5070 N. State Road 7, Fort Lauderdale, FL 33319 ("La Quinta Tamarac").

27. At all times material hereto, LQ MANAGEMENT LLC was aware of the Hotel Code of Conduct and the steps that could be taken to identify and prevent sex trafficking but has refused to sign it.

### COUNT I – LA QUINTA located at 7901 SW 6TH ST PLANTATION VIOLATION OF THE TRAFFICKING VICTIMS PROTECTION REAUTHORIZATION ACT OF 2008, 18 U.S.C. §1595

28. Paragraphs 1 through 27 are realleged as though fully set forth herein.

29. Plaintiff is a survivor of sex trafficking within the meaning of 18 U.S.C. §1591 and is entitled to bring a civil action under 18 U.S.C. §1595 against any individual or entity whose violations of the TVPRA proximately caused the Plaintiff to sustain physical and psychological injuries.

30. Plaintiff was trafficked at the SW 6th Street La Quinta for approximately 30 nights.

31. SW 6th Street La Quinta participated in the venture of trafficking Plaintiff by providing the location for the sexual exploitation to take place. Without a "safe" location (one such as SW 6th Street La Quinta, where the hotel turns a blind eye to red flags and does nothing to prevent trafficking or protect the victim), there can be no trafficking.

32. SW 6th Street La Quinta's cooperation in the venture exceeded that inherent in the normal room renting transaction because SW 6th Street La Quinta elected to ignore red flags that Plaintiff was being trafficked. SW 6th Street La Quinta knew or should have known that Plaintiff was being sexually exploited in violation of the TVPRA. Plaintiff exhibited red flags upon which SW 6th Street La Quinta's staff should have been trained to act.

33. Those red flags included that a girl in her late teens or early twenties (who looked her age or even younger) having Elite status and thousands of "rewards points" in the La Quinta rewards program. At 10 points per dollar spent, that would amount to having spent over $2,000 in room stays. Plaintiff almost always paid for the room in cash; she occasionally used a pre-paid debit card. Plaintiff would often stay for a few days at a stretch, leave, and then come back. Plaintiff checked in with a purse and, at times, a child-sized bag, nothing else. Plaintiff would only pay for one night at a time, renewing her stay the next day. Johns would enter the room with no luggage, stay anywhere between 20 minutes to an hour, and then leave. Plaintiff's trafficker was a very tall man (approximately 6' 4") and he was constantly present and hiding the drugs all over the hotel. When Plaintiff would finish with a John, the trafficker would tell her where to find her next drug hit. The trafficker hid drugs over emergency exit signs, in stairwells, on top of doorways, on top of security cameras, etc. The hotel had security cameras and no one said a word or questioned any of the strange behavior. Plaintiff always turned away housekeeping and asked to change her own linens. She would put her trash outside her door. On information and belief,

housekeeping would have recorded that information and a hotel manager would have seen it; but no hotel employee ever contacted the authorities. Plaintiff was on a first-name basis with two of the male managers at the SW 6th Street La Quinta. Upon information and belief, these managers knew what was happening and did nothing to stop it; they always rented a room to Plaintiff when she would return.

34. SW 6th Street La Quinta took no steps, and thereby affirmatively avoided, confirming that Plaintiff was a human trafficking victim being exploited on SW 6th Street La Quinta's property. In fact, SW 6th Street La Quinta, like most other La Quinta properties, has refused to sign the Hotel Code of Conduct, which would call on the La Quinta to be on the lookout for red flags like those described above.

35. SW 6th Street La Quinta financially benefited from the venture. In exchange for providing a location for Plaintiff's continued sexual exploitation, SW 6th Street La Quinta received monetary compensation for every night the room in which Plaintiff was exploited was rented. SW 6th Street La Quinta continued renting the room despite the red flags that called attention to human trafficking.

36. As a result of SW 6th Street La Quinta's violations of the TVPRA, Plaintiff has suffered damages.

**WHEREFORE,** Plaintiff Jane Doe demands judgment against SW 6th Street La Quinta for compensatory damages, costs, interest as allowed by law, and for such other relief as the Court deems just and demands a trial by jury on all issues so triable as a matter of right.

### COUNT II – LA QUINTA TAMARAC
### VIOLATION OF THE TRAFFICKING VICTIMS PROTECTION
### REAUTHORIZATION ACT OF 2008, 18 U.S.C. §1595

37. Paragraphs 1 through 27 are realleged as though fully set forth herein.

38.     Plaintiff is a survivor of sex trafficking within the meaning of 18 U.S.C. §1591 and is entitled to bring a civil action under 18 U.S.C. §1595 against any individual or entity whose violations of the TVPRA proximately caused the Plaintiff to sustain physical and psychological injuries.

39.     Plaintiff was trafficked in La Quinta Tamarac for approximately 20 to 30 nights.

40.     La Quinta Tamarac participated in the venture of trafficking Plaintiff by providing the location for the sexual exploitation to take place. Without a "safe" location (one such as La Quinta Tamarac, where the hotel turns a blind eye to red flags and does nothing to prevent trafficking or protect the victim), there can be no trafficking.

41.     La Quinta Tamarac's cooperation in the venture exceeded that inherent in the normal room renting transaction because La Quinta Tamarac elected to ignore red flags that Plaintiff was being trafficked. La Quinta Tamarac knew or should have known that Plaintiff was being sexually exploited in violation of the TVPRA. Plaintiff exhibited red flags upon which La Quinta Tamarac's staff should have been trained to act.

42.     Those red flags included that a girl in her late teens or early twenties (who looked her age or even younger) having Elite status and thousands of "rewards points" in the La Quinta rewards program. At 10 points per dollar spent, that would amount to having spent over $2,000 in room stays. Plaintiff almost always paid for the room in cash; she occasionally used a pre-paid debit card. Plaintiff would often stay for a few days at a stretch, leave, and then come back. Plaintiff checked in with a purse and, at times, a child-sized bag, nothing else. Plaintiff would only pay for one night at a time, renewing her stay the next day. Johns would enter the room with no luggage, stay anywhere between 20 minutes to an hour, and then leave. Plaintiff's trafficker was a very tall man (approximately 6' 4") and he was constantly present and hiding the drugs all

over the hotel.  When Plaintiff would finish with a John, the trafficker would tell her where to find her next drug hit.  The trafficker hid drugs over emergency exit signs, in stairwells, on top of doorways, on top of security cameras, etc.  The hotel had security cameras and no one said a word or questioned any of the strange behavior.  Plaintiff always turned away housekeeping and asked to change her own linens.  She would put her trash outside her door.  On information and belief, housekeeping would have recorded that information and a hotel manager would have seen it; but no hotel employee ever contacted the authorities.

43.   La Quinta took no steps, and thereby affirmatively avoided, confirming that Plaintiff was a human trafficking victim being exploited on La Quinta Tamarac's property.  In fact, La Quinta Tamarac, like most other La Quinta properties, has refused to sign the Hotel Code of Conduct, which would call on the La Quinta to be on the lookout for red flags like those described above.

44.   La Quinta Tamarac financially benefited from the venture.  In exchange for providing a location for Plaintiff's continued sexual exploitation, La Quinta Tamarac received monetary compensation for every night Plaintiff was exploited in her rented room.  La Quinta Tamarac continued renting the room despite the red flags that called attention to human trafficking.

45.   As a result of La Quinta Tamarac's violations of the TVPRA, Plaintiff has suffered damages.

**WHEREFORE,** Plaintiff Jane Doe demands judgment against La Quinta Tamarac for compensatory damages, costs, interest as allowed by law, and for such other relief as the Court deems just and demands a trial by jury on all issues so triable as a matter of right.

Dated this 9th day of December, 2020.

/s/ *C. Richard Newsome*
**C. RICHARD NEWSOME, ESQUIRE**
Florida Bar No.: 827258
**R. FRANK MELTON, ESQUIRE**
Florida Bar No.: 0475440
**MILETTE E. WEBBER, ESQUIRE**
Florida Bar No.: 145874
**MAEGEN PEEK LUKA**
Florida Bar No.: 549851
**NEWSOME MELTON**
201 South Orange Avenue, Suite 1500
Orlando, Florida 32801
Telephone: (407) 648-5977
Facsimile: (407) 648-5282
*Attorneys for Plaintiff*
newsome@newsomelaw.com
melton@newsomelaw.com
webber@newsomelaw.com
swinehart@newsomelaw.com
oneill@newsomelaw.com
luka@newsomelaw.com